**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

WILLIAM HAYWARD FREEMAN, SR., §
(TDCJ-CID #01878813) §
 §
               Petitioner, §
 §
v. §
 § CIVIL ACTION NO. H-17-2343
LORIE DAVIS, §
 §
               Respondent. §

## MEMORANDUM AND OPINION

      Texas state inmate William Hayward Freeman, Sr., filed a petition for a writ of habeas corpus

under 28 U.S.C. § 2254, challenging his 2013 state-court conviction for aggravated sexual assault

of a child under the age of 14. The respondent, Lorie Davis, moves for summary judgment because

the petition is untimely or, alternatively, without merit. (Docket Entry No. 13). Freeman objects.

(Docket Entry No. 18). Based on careful consideration of the pleadings, the motion, the record, and

the applicable law, this court finds that there are no genuine factual disputes material to deciding the

claims and that the respondent is entitled to summary judgment as a matter of law. Final judgment

is separately entered. The reasons are explained below.

### I.      Background and Claims

      Freeman was indicted for the felony offense of aggravated sexual assault of a child, enhanced

with one prior felony conviction, in the 182nd District Court of Harris County, Texas (Cause No.

1322259). A jury found Freeman guilty and, in August 2013, the court sentenced Freeman to a 75-

year prison term.

The First Court of Appeals of Texas affirmed Freeman's conviction and sentence in October 2014. *Freeman v. State*, No. 01–13–00723–CR, 2014 WL 5500481 (Tex. App.—Houston [1st Dist.] Oct. 30, 2014) (mem. op.). The Texas Court of Criminal Appeals refused discretionary review in April 2015. *Freeman v. State*, No. PD–1546–14 (Tex. Crim. App. April 22, 2015). In October 2015, Freeman filed his first state application for a writ of habeas corpus under Article 11.07 of the Texas Code of Criminal Procedure, challenging his conviction. *Ex parte Freeman*, Application No. 83,228-03. The Court of Criminal Appeals dismissed the application as noncompliant. *Id.* In November 2015, Freeman filed a second state habeas application, *Ex parte Freeman*, Application No. 83,228-04, which the Court of Criminal Appeals denied in July 2016, without a hearing or written order, on the findings of the trial court.

Freeman filed this federal petition in July 2017, raising the following grounds for federal habeas relief.

1.    Prosecutorial error, because the State knowingly presented false testimony.

2.    Trial-court error, because the state trial judge erred in:

    a.    overruling Freeman's motion to quash the indictment;

    b.    failing to remain impartial; and

    c.    conducting proceedings in his absence.

4.    Ineffective assistance, because trial counsel:

    a.    failed to conduct a proper investigation, including interviewing the complainant and outcry witness;

    b.    failed to move to proceed before a different judge;

    c.    failed to object to the admissibility of DNA evidence; and

    d.    failed to subpoena certain witnesses.

5.      Ineffective assistance on appeal, because counsel failed to provide Freeman
        a free copy of the record on appeal.

6.      Denial of his right to a speedy trial.

(Docket Entry No. 1, at 8–10; Docket Entries No. 4, 4-1, 4-2). The respondent argues that Freeman's

claims are time-barred or, alternatively, without merit. (Docket Entry No. 13).

Each claim and argument is analyzed against the record and the applicable legal standards.

## II.     Factual Background

The statement of facts is taken from the Texas Court of Appeals opinion affirming Freeman's

conviction.

On September 5, 2011, Deshaundra Gbadamosi left her three children at her mother's
home with appellant while Gbadamosi and her mother, Mary Knighton, went to the
grocery store. Seven-year old S.M. was watching television with her brother and her
cousin in their grandmother's room. Appellant was in the room with them. S.M.
went into the hallway bathroom. Appellant left the room around this time as well.

While S.M. was still in the bathroom, her older sister, D.F., asked the other children
where S.M. had gone. The children indicated toward the bathroom, so D.F. went to
the door of the hallway bathroom, but could not open it because the door was locked.
After trying to open the door, appellant walked out of the bathroom; S.M. was still
inside. D.F. testified S.M. looked "shaken up a little bit" and "had a funny look on
her face." D.F. also noticed a screwdriver was on the bathroom sink. D.F. asked
S.M. what happened, but she did not respond.

Knighton received several calls indicating that something had happened, so Knighton
and Gbadamosi left the grocery store and drove back to Knighton's home. When
they both arrived, Gbadamosi testified at trial that appellant looked nervous and left
the house immediately thereafter. S.M. was crying and would not tell her mother
what was wrong. After Gbadamosi assured S.M. that she loved her and that whatever
had happened was not S.M.'s fault, S.M. told Gbadamosi what had transpired.

Pursuant to article 38.072 of the Texas Code of Criminal Procedure, the State
provided appellant with pretrial notice of their intent to offer an outcry witness and
a pretrial summary of the hearsay statement being offered through the witness. *See*
TEX. CODE CRIM. PROC. ANN. art. 38.072 § 2(b) (Vernon Supp. 2014) (providing that
outcry statement is not hearsay if, on or before 14th day before trial begins, the State
notifies defendant of intention to offer outcry statement and provides defendant with

name of outcry witness and written summary of the statement). The summary in this case stated:

> Complainant [S.M.] told Deshaundra Gbadamosi on or about September 5, 2011 that she was in the restroom and that William Freeman opened the door with a screw driver and pulled his pants down and told her to keep her pants down and then picked her up from the toilet and placed her on the sink counter top. William Freeman then penetrated her from the front (vagina) while holding onto her back and moving her body back and forth and kissing her on the mouth. William Freeman rubbed her bottom (butt) and tried to penetrate her from behind.

Outside the presence of the jury, the judge conducted a hearing to determine if the statement was admissible. The relevant part of the hearing proceeded as follows on direct examination:

Q: When you asked her what was wrong, what did she tell you?

A: First she say [sic], nothing.

Q: Okay.

A: And then she was like, he touched me.

Q: At first she said nothing, then she says he touched her. Is this still all within the same conversation?

A: Yes, same conversation.

Q: So her first comment to you of nothing was just the first thing she said?

A: Yes.

Q: Okay. And she said the words, he touched me?

A: Yes.

Q: What else did she say?

A: That she was scared to tell me because he told her she better not tell.

Q: Okay. Did you keep asking her?

A: Yes. I also examined her.

Q: We'll get to that in a moment. When you keep asking her, what does she say?

A: She told me that she was using the restroom and he came in the restroom behind her and he locked [sic] the door with a screwdriver. He sat her on the sink, told her to be quiet, and pulled down her pants more, because she was using the restroom. And he told her not to say anything; if she did, he would do something to her.

Q: Okay. Now, just want to be clear for the record. You said that [S.M.]—the part about the screwdriver, you said he unlocked it or locked it?

A: The door was locked. He came in the door and unlocked it with a screwdriver.

Q: Now, after she tells you this part, she was in the bathroom, he comes in, tells her to be quiet, what happens?

A: She was trying to get out. He put his hand over mouth so she couldn't make any noise.

Q: And what did she say happened next?

A: My daughter came to the door and that's when he let her out.

Q: Now, did [S.M.] tell you about any sexual contact between herself and this person?

A: Yes.

Q: What did she tell you?

A: That he tried to put his private area in hers.

Q: Now, she—you just said he tried to?

A: Yes.

Q: Are those the exact words that she used or are you recalling what she said?

A: I'm recalling it. It may not be the exact words.

The defendant objected to the admissibility of these statements on the ground that various details of Gbadamosi's testimony were not provided in the State's summary. The trial court allowed Gbadamosi to testify at trial, finding her testimony to be "reasonably reliable as to time, content, and circumstance." At trial, Gbadamosi provided similar outcry testimony.

*Freeman*, 2014 WL 5500481, at \*1–2.

## III.    The Legal Standards

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), federal habeas relief cannot be granted on legal issues adjudicated on the merits in state court unless the state adjudication was contrary to or unreasonably applied clearly established federal law as determined by the Supreme Court. *Harrington v. Richter*, 562 U.S. 86, 98–99 (2011); *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000); 28 U.S.C. §§ 2254(d)(1), (2). A state-court decision is contrary to federal law if it applies a rule that contradicts the governing law set forth by the Supreme Court, or if it involves materially indistinguishable facts and arrives at a different result. *Early v. Packer*, 537 U.S. 3, 7–8 (2002). A state court unreasonably applies federal law if it unreasonably applies the correct legal rule to the facts, or unreasonably extends a legal principle to a different and inappropriate context, or unreasonably refuses to extend that principle to a context to which it should apply. *Williams*, 529 U.S. at 409. The issue is whether the state court's application was objectively unreasonable. *Id.* "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Richter*, 562 U.S. at 102. As the Supreme Court stated in *Richter*,

If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a "guard against

extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal.

*Id.*, at 102–03 (emphasis added; internal citations omitted).

AEDPA constricted both the nature and availability of habeas review. AEDPA requires federal habeas courts to defer to a state court's resolution of factual issues. Under 28 U.S.C. § 2254(d)(2), a state-court decision on the merits based on a factual determination will not be overturned unless it is objectively unreasonable in light of the evidence in the state-court proceeding. *Miller-El v. Cockrell*, 537 U.S. 322, 343 (2003). A federal habeas court presumes the state court's factual determination to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Miller-El*, 537 U.S. at 330–31. This presumption extends not only to express fact findings, but also to implicit findings. *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006) (citations omitted).

Summary judgment is proper when the record shows "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In ordinary civil cases, a district court considering a motion for summary judgment must construe disputed facts in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."). "As a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases." *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000). On summary judgment, however, a court views the evidence through "the prism of the substantive evidentiary burden." *Anderson*, 477 U.S. at 254. This court applies general summary judgment standards to the extent they do not conflict with the AEDPA. *See Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002)

("[Rule 56] applies only to the extent that it does not conflict with the habeas rules."), *abrogated on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004).

Freeman is representing himself. Self-represented habeas petitions are construed liberally and are not held to the same stringent and rigorous standards as pleadings lawyers file. *See Martin v. Maxey*, 98 F.3d 844, 847 n.4 (5th Cir. 1996); *Guidroz v. Lynaugh*, 852 F.2d 832, 834 (5th Cir. 1988); *Woodall v. Foti*, 648 F.2d 268, 271 (5th Cir. Unit A June 1981). This court broadly interprets Freeman's state and federal habeas petitions. *Bledsue v. Johnson*, 188 F.3d 250, 255 (5th Cir. 1999).

## IV.    The One-Year Statute of Limitations

AEDPA sets a one-year limitations period for federal habeas petitions. *See* 28 U.S.C. § 2244(d). The statute provides:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(1)–(2).

Because Freeman challenges a state-court conviction, the limitations period began to run on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." *Id.*, § 2244(d)(1)(A). Freeman's conviction became final on July 21, 2015, when his time to file a petition for a writ of certiorari expired. *See* SUP. CT. R. 13.1 (a petition for writ of certiorari is timely filed 90 days after entry of judgment). The limitations period expired one year later on July 21, 2016. Freeman did not file his federal petition until July 26, 2017. A merits review of his grounds for relief is barred unless a statutory or equitable exception applies.

Under 28 U.S.C. § 2244(d)(2), the time during which a "properly filed application for [s]tate post-conviction or other collateral review" is pending is not counted toward the limitations period. Freeman's first state habeas corpus application, which was dismissed for noncompliance, did not toll the limitations period. However, his second state habeas corpus application, filed on November 12, 2015, and denied on July 13, 2016, tolled the limitations period for 245 days. Freeman's federal habeas petition was due on March 23, 2017. He did not file his federal petition until four months later.

The record discloses no basis to extend the deadline for four more months. No other AEDPA provision applies to extend the limitations period. Freeman does not allege facts showing that he was precluded from filing a timely federal habeas petition as the result of state action. None of his claims relies on a newly recognized constitutional right that the Supreme Court retroactively applied to cases pending collateral review. *See* 28 U.S.C. § 2244(d)(1)(B)–(C). None of Freeman's proposed claims implicate a factual predicate that he did not discover earlier or could not have discovered earlier through due diligence. *Id.*, § 2244(d)(1)(D).

Finally, Freeman fails to allege any extraordinary circumstance that would warrant extending the deadline through equitable tolling. Whether to apply equitable tolling is in the district court's discretion. *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999). The petitioner must demonstrate "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). Equitable tolling is generally warranted only when a petitioner is actively misled by the state or prevented from asserting his rights through a timely filed petition. *Cousin v. Lensing*, 310 F.3d 843, 848 (5th Cir. 2000). "Neither a plaintiff's unfamiliarity with the legal process nor his lack of representation during the applicable filing period merits equitable tolling." *Turner v. Johnson*, 177 F.3d 390, 392 (5th Cir. 2009), *cert. denied*, 528 U.S. 1007 (1999). The petitioner has the burden of showing that he is entitled to equitable tolling. *Phillips v. Donnelly*, 216 F.3d 508, 511 (5th Cir. 2000).

Nothing in the record suggests that the State of Texas misled Freeman or prevented him from filing within the deadline. Nor does Freeman show that he diligently pursued timely habeas relief. In his response to the respondent's motion for summary judgment, Freeman contends that he did not receive notice that the Court of Criminal Appeals had denied his state habeas application until May 30, 2017, more than 10 months after it was denied. *See* Docket Entry No. 18, at 9. A delay in receiving notice of the denial of a state habeas application can serve as a basis for equitable tolling if the delay is "exceptional." *Phillips v. Donnelly*, 216 F.3d 508, 511 (5th Cir.), *modified on reh'g*, 223 F.3d 797 (5th Cir. 2000); *Hardy v. Quarterman*, 577 F.3d 596, 598 (5th Cir. 2009). The petitioner's diligence is critical because "equitable tolling should only be applied if the applicant diligently pursues § 2254 relief." *Melancon v. Kaylo*, 259 F.3d 401, 408 (5th Cir. 2001). *See also*

*Hardy*, 577 F.3d at 598 ("To warrant tolling under such circumstances, a petitioner must show that he 'pursued the [habeas corpus relief] process with diligence and alacrity' both before and after receiving notification."). Waiting to pursue claims is not sufficient to excuse a petitioner from the requirement to assert his claims in a timely manner. *Fisher*, 174 F.3d at 715 (citing *Covey v. Arkansas River Co.*, 865 F.2d 660, 662 (5th Cir. 1989), for the proposition that "equity is not intended for those who sleep on their rights").

The record does not support a conclusion that Freeman was diligent in pursuing his rights. Freeman let more than two months pass between the date his conviction became final and when he first sought to file a state habeas application. Freeman delayed filing a status request on his state writ application until May 30, 2017—approximately 18 months after he filed it and 10 months after the Court of Criminal Appeals denied it. Even assuming that Freeman did not receive notice of the denial of his state application until May 30, 2017, he waited almost two months after he admits receiving notice before filing his federal petition. Freeman fails to show that he diligently pursued his rights or that any extraordinary circumstance prevented him from timely filing his federal habeas petition.

The record discloses no other basis to extend the limitations period. Given Freeman's lack of diligence, there is no "rare and exceptional" condition that justifies extending the filing deadline. *See Felder*, 204 F.3d at 173. His petition was filed too late to be considered on the merits. 28 U.S.C. § 2244(d).

## V.    Freeman's claims are Without Merit.

Even if Freeman had timely filed his petition or equitable tolling applied, his claims still fail. Each claim is analyzed below.

## A. The Claim of Prosecutorial Error

Freeman alleges that he was denied due process when the State knowingly presented false testimony from Officer Jose Sanchez and Officer Elizabeth Hanson.[1] (Docket Entry No. 1, at 6–8; Docket Entry No. 4, at 9–13; Docket Entry No. 4-1, at 3–9). The respondent maintains that Freeman fails to demonstrate a due process violation. *See* Docket Entry No. 13, at 15–19.

"[A] conviction obtained through the use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment." *Napue v. Illinois*, 360 U.S. 264, 269 (1959) (citations omitted). A defendant is denied due process when prosecutors knowingly use perjured testimony at trial or allow untrue testimony to go uncorrected. *See Giglio v. United States*, 405 U.S. 150, 153 (1972); *see also Faulder v. Johnson*, 81 F.3d 515, 519 (5th Cir. 1996) (citing *Giglio* and *Napue*). To establish a due process violation based on the state's use of false or misleading testimony, a habeas petitioner must show that: "(1) the witness gave false testimony; (2) the falsity was material in that it would have affected the jury's verdict; and (3) the prosecution used the testimony knowing it was false." *Reed v. Quarterman*, 504 F.3d 465, 473 (5th Cir. 2007) (citation omitted); *Faulder*, 81 F.3d at 519.

Perjured or false testimony is not shown merely by contradictory testimony from witnesses, inconsistencies within a witness's testimony, or conflicting reports, written statements, and the trial testimony of prosecution witnesses. *See Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir. 1990) (contradictory trial testimony merely establishes a credibility question for the jury); *United States*

---

[1]Although Freeman labels his claim about Officer Hanson as one of trial-court error, the substance of his claim is prosecutorial misconduct. *See Black v. Davis*, __ F.3d __, 2018 WL 4214980 (5th Cir. 2018) (quoting *Hernandez v. Thaler*, 630 F.3d 420, 426 (5th Cir. 2011) (liberal construction of a prisoner's § 2254 petition means, in part, that "the substance of the relief sought by a *pro se* pleading [controls], not the label that the petitioner has attached to it").

*v. Martinez-Mercado*, 888 F.2d 1484, 1492 (5th Cir. 1989) ("The omission of certain facts from the reports and written statements of the prosecution's witnesses, alone, is certainly not adequate to put the prosecution on notice of perjury on their part, much less to establish that such perjury in fact occurred."); *United States v. Viera*, 819 F.2d 498, 502 (5th Cir. 1987) (inconsistencies between pre-trial and in-trial testimony do not, standing alone, show false testimony).

Freeman asserts that Officer Sanchez provided false testimony when he testified that on the morning of September 6, 2011, he spoke with the complainant's sister, D.F., at St. Luke's Hospital. *See* Docket Entry No. 4, at 9. Freeman argues that this statement is false because D.F. testified that she did not go to the hospital that day and she did not recall speaking with Officer Sanchez. *Id.* Freeman further asserts that Officer Hanson provided the same false testimony because she relied on the incorrect information Officer Sanchez provided when she prepared her incident report. *See* Docket Entry No. 4-1, at 3–9.

The state habeas court determined that Freeman failed to allege sufficient facts which, if true, would entitle him to relief on his allegations of prosecutorial misconduct. (Docket Entry No. 12-28, at 35). Freeman does not establish that the state court's decision to deny relief was unreasonable. As a threshold matter, Freeman does not identify a due process violation because the record does not support an inference that Officer Sanchez's testimony was false. Officer Sanchez testified that he met the victim, the victim's mother, and the victim's sister, D.F., at St. Luke's Community Emergency Center on September 6, 2011. *See* Docket Entry No. 12-1, at 17–20. On direct examination, the prosecutor asked Officer Sanchez to describe his reason for speaking to the victim, the victim's mother, and D.F. at the hospital. *Id.* at 23. Officer Sanchez responded that he wanted "[t]o gather basic facts or what happened that could be reviewed later." *Id.* D.F. testified on cross-

examination that she did not go to the hospital and did not recall speaking with Officer Sanchez. *Id.* at 134–35. The inconsistency does not demonstrate the falsity of Officer Sanchez's testimony. Instead, it establishes a credibility issue for the jury to decide. *See Koch*, 907 F.2d at 531. That is not enough to show that Officer Sanchez gave false testimony or a constitutional violation. Freeman is not entitled to relief on this claim.

**B.      The Claims of Trial-Court Error**

Freeman alleges that the trial court abused its discretion in: (1) overruling his motion to quash the indictment; (2) failing to remain impartial; and (3) conducting proceedings in his absence. *See* Docket Entry No. 4-1, at 9–12; Docket Entry No. 4-2, at 1–8. These claims are procedurally barred from federal habeas review.

Federal review of a claim is procedurally barred if the last state court to consider the claim clearly based its denial of relief on procedural default. *Ylst v. Nunnemaker*, 501 U.S. 797, 802–04 (1991). Texas law is clear that a habeas application cannot be used to litigate matters that could and should have been raised on direct appeal. *Ex parte Goodman*, 816 S.W.2d 383, 385 (Tex. Crim. App. 1991). The federal courts recognize this Texas procedural-default rule. *Aguilar v. Dretke*, 428 F.3d 526, 535 (5th Cir. 2005).

The state habeas court determined that Freeman's "allegations of trial court error are 'record claims' that should have been raised in the trial court and on direct appeal, and [Freeman] is now procedurally defaulted from litigating these issues by way of habeas." *See* Docket Entry No. 12-28, at 36, ¶ 10 (citing *Ex parte Gardner*, 959 S.W.2d 189, 199 (Tex. Crim. App. 1996); *Ex parte Banks*, 769 S.W.2d 539 (Tex. Crim. App. 1989)). The Texas Court of Criminal Appeals denied relief, without written order, on the findings of the trial court. (Docket Entry No. 12-18). Because Freeman

did not raise these claims of trial-court error on direct appeal, and because the last court to consider the claim clearly denied relief based on the state procedural default, Freeman's claims are barred absent a showing of cause and prejudice or a fundamental miscarriage of justice. Freeman does not allege or show any basis to find that these exceptions apply. He is entitled to relief on these claims.

## C.  The Claims of Ineffective Assistance of Counsel

Freeman alleges that he was denied effective assistance at trial because trial counsel: (1) failed to do an adequate pretrial investigation, including interviewing the complainant and the outcry witness; (2) failed to move for proceedings in front of a different judge; (3) failed to object to the admissibility of DNA evidence; and (4) failed to subpoena certain witnesses. *See* Docket Entry No. 4, at 13–17; Docket Entry No. 4-1, at 12–24. Freeman argues that he was denied effective assistance on appeal because appellate counsel failed to provide him a free copy of relevant records. *See* Docket Entry No. 4-1, at 1–3. The state habeas court rejected each of these claims and concluded that Freeman failed to demonstrate that either trial or appellate counsel provided constitutionally ineffective assistance. The record supports the state court's conclusion.

### 1.  Trial Counsel

The Sixth Amendment guarantees a criminal defendant effective assistance of counsel. U.S. CONST. amend. VI. A federal habeas petitioner's claim that he was denied effective assistance is reviewed under *Strickland v. Washington*, 466 U.S. 668 (1984). A petitioner must show both constitutionally deficient performance by counsel and actual prejudice as a result of that deficient performance. *Id.* at 687. The failure to demonstrate either deficient performance or actual prejudice is fatal to an ineffective-assistance claim. *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

A counsel's performance is deficient if it falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. A court's review of counsel's performance is highly deferential, with a strong presumption in favor of finding that counsel followed a reasonable and objectively reasoned trial strategy. *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996). To overcome this presumption, a petitioner must identify counsel's acts or omissions that did not reflect or result from reasonable professional judgment. *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). An error by counsel, even if professionally unreasonable, does not warrant setting the judgment aside if the error did not change the judgment. *Strickland*, 466 U.S. at 691.

Due to "the almost infinite variety of possible trial techniques and tactics available to counsel, [a court] is careful not to second guess legitimate strategic choices." *Yohey v. Collins*, 985 F.2d 222, 228 (5th Cir. 1993). "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Johnson v. Dretke*, 394 F.3d 332, 337 (5th Cir. 2004) (internal quotation marks and citations omitted); *accord United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002) (citation omitted).

Actual prejudice from deficient performance is shown if there is a reasonable probability that, but for counsel's unprofessional error, the result of the trial would have been different. *Id.* at 694. Prejudice focuses on whether counsel's deficient performance makes the trial result unreliable or the trial proceeding fundamentally unfair. *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). There is neither unreliability nor unfairness if counsel's alleged ineffectiveness does not deprive the petitioner of substantive or procedural rights. *Id.* A petitioner must "affirmatively prove prejudice." *Strickland*, 466 U.S. at 693.

The state habeas corpus court rejected Freeman's ineffective-assistance claims. The issue is not whether this court "'believes the state court's determination' under the *Strickland* standard 'was incorrect but whether the determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 478 (2007)). "[B]ecause the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles*, 556 U.S. at 123 (citation omitted). A "doubly deferential" standard applies on federal habeas review. *Id.*; *see also Richter,* 562 U.S. at 105 (emphasizing that the standards created by *Strickland* and § 2254(d) are "highly deferential," and "'doubly' so" when applied in tandem) (citations and quotations omitted). The record fails to show that the state court's decision was unreasonable under this doubly deferential standard.

Freeman contends that trial counsel failed to conduct a proper pretrial investigation, which would have included interviewing the complainant and the outcry witness. (Docket Entry No. 4, at 13–17). A habeas corpus petitioner who alleges that his trial counsel failed to adequately investigate must state with specificity what the investigation would have revealed and how it would have changed the outcome. *See Miller v. Dretke*, 420 F.3d 356, 361 (5th Cir. 2005) (citing *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989)). Freeman alleges that had trial counsel interviewed and investigated the outcry witness, Deshaundra Gbadamosi, counsel would have determined that her testimony about sexual assault was false. *See* Docket Entry No. 4, at 14–15. Contrary to Freeman's allegations, the record reflects that trial counsel thoroughly cross-examined Gbadamosi on this issue during both the guilt-innocence and punishment phases. *See* Docket Entry 12-1, at 97–98; Docket Entry No. 12-4, at 40–49. Freeman fails to identify how interviewing the

complainant would have benefitted him. Freeman does not otherwise show that he was denied effective assistance of counsel as the result of this alleged failure to investigate.

Freeman next alleges that trial counsel was deficient in allowing his trial to proceed before Judge James Anderson because Judge Anderson did not participate in an unrecorded pretrial proceeding on the admissibility of outcry testimony. *See* Docket Entry No. 4-1, at 12–17. Although difficult to ascertain, Freeman appears to argue that a different judge presided over this pretrial hearing. Neither Freeman nor Judge Anderson was present for this hearing, and it was not recorded. Freeman argues that as a result, trial counsel should not have allowed Judge Anderson to preside over the trial. Freeman does not identify any legal or factual ground on which counsel could have objected or moved for a recusal. He therefore fails to show unreasonable or deficient performance. Nor does he show prejudice. The record reflects that Judge Anderson held a hearing on Freeman's objections to the outcry testimony before the outcry witness testified. *See* Docket Entry No. 12-1, at 28–46.

Freeman also contends that trial counsel failed to object to the admission of DNA evidence on the basis that the State did not establish a proper chain of custody. *See* Docket Entry No. 4-1, at 17–22. Freeman argues that "the State did not present any testimony by the actual person that took DNA evidence from the complainant to prove the specimans (sic) were taken, and whether the complainant was the person that took the DNA specimans (sic) from[.]" *Id.* at 18. The record does not support this claim.

In rejecting this claim on state habeas review, the trial court found that Tarra Kerr, a sexual-assault nurse examiner, testified that she examined the complainant and collected samples for DNA analysis. *See* Docket Entry No. 12-28, at 35. Trial counsel moved to suppress the DNA evidence

and objected to admitting the DNA evidence. *See* Docket Entry No. 12-28, at 35. The record supports these findings. *See* Docket Entry No. 12-1, at 202–18; Docket Entry No. 11-20, at 66–67. The record evidence shows no basis to overcome the presumption that trial counsel's strategy and actions were reasonable. There is no basis to find deficient performance.

Finally, Freeman alleges that trial counsel ignored his request to subpoena four witnesses. *See* Docket Entry No. 4-1, at 22–24; Docket Entry No. 4-2, at 1. "Claims of uncalled witnesses are disfavored, especially if the claim is unsupported by evidence indicating the witnesses's willingness to testify and the substance of the proposed testimony." *Gregory v. Thaler*, 601 F.3d 347, 352 (5th Cir. 2010) (citing *Harrison v. Quarterman*, 496 F.3d 419, 428 (5th Cir. 2007)); *see also Sayre v. Anderson*, 238 F.3d 631, 635–36 (5th Cir. 2001) (emphasizing that complaints of uncalled witnesses are not favored in federal habeas corpus review because allegations as to what a witness would have testified are mostly speculative) (citations omitted). A petitioner "must show not only that [the] testimony would have been favorable, but also that the witness would have testified at trial." *Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002) (quoting *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985)).

Freeman contends that counsel should have subpoenaed his ex-wife, Marilyn Freeman, who would have testified that he was never away from the house during the hours when he was alleged to have assaulted the victim's mother. *See* Docket Entry No. 4-1, at 23. He also asserts that his trial counsel should have subpoenaed Mary Knighton, along with records from Child Protective Services (CPS) and the police, to show that the allegations against him were false. *Id.*, at 22–23. Finally, he contends that counsel should have subpoenaed Monica White, who lived with him for the 8 years before his arrest, along with Ebony White. *Id.* at 21. Although Freeman identifies the witnesses

counsel should have called, he does not present an affidavit or other sworn account from any of these individuals. Absent affidavits or similar evidence from the uncalled witnesses, Freeman's claim is speculative and conclusory. The claim demonstrates neither deficient performance by trial counsel nor prejudice. *See Sayre*, 238 F.3d at 636. Because Freeman's claim does not rise about the speculative level, he does not demonstrate that his attorney was deficient for failing to call certain witnesses or that he was prejudiced as a result.

On state habeas review, the trial court rejected Freeman's ineffective-assistance claims after finding that he failed to demonstrate either deficient performance or prejudice under *Strickland*. *See* Docket Entry No. 12-28, at 35–36. The trial court determined:

4. The applicant fails to show what a more thorough, in-depth investigation would have revealed.

5. The applicant fails to allege sufficient facts which, if true would entitle him to relief on his claims that the trial counsel failed to object to inadmissible DNA evidence.

6. The applicant fails to show that potential defense witnesses were available to testify at trial or that their testimony would have benefitted the applicant.

*Id.* at 36, ¶¶ 4–6 (internal citations omitted). The Court of Criminal Appeals denied relief without a written order based on the findings of the trial court. Freeman does not show that the decision to reject his claims was unreasonable under the doubly deferential standard of review. Freeman is not entitled to federal habeas corpus relief on his claims of ineffective assistance of trial counsel.

### 2. Appellate Counsel

Freeman alleges that appellate counsel failed to provide a free copy of the appellate record for him to use on direct appeal. (Docket Entry No. 4-1, at 1–3).

Under *Strickland*, this claim also requires Freeman to establish both constitutionally deficient performance and actual prejudice. *See Smith v. Murray*, 477 U.S. 527, 535–36 (1986) (applying *Strickland* to a claim of ineffective assistance on appeal). To establish that appellate counsel's performance was deficient, Freeman must show that counsel was objectively unreasonable in failing to find arguable issues to appeal — that is, that counsel unreasonably failed to discover non-frivolous issues and raise them. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). Freeman must also show actual prejudice by a "reasonable probability" that, but for counsel's deficient performance, "he would have prevailed on his appeal." *Id.*

A reasonable appellate attorney has an obligation to research the relevant facts and law and make informed decisions on what should or should not be raised. *Strickland*, 466 U.S. at 690–91. The Constitution does not require appellate counsel to advance every conceivable argument, regardless of merit. *Evitts v. Lucey*, 469 U.S. 387, 394 (1985). If an attorney fails to brief a certain issue on direct appeal or to do so adequately, the petitioner must show initially a reasonable probability of a different outcome if the attorney had adequately addressed the issue. *United States v. Dovalina*, 262 F.3d 472, 474–75 (5th Cir. 2001) (citing *Jones v. Jones*, 163 F.3d 285, 302 (5th Cir. 1998)). The petitioner must then show that the deficient performance led to a fundamentally unfair and unreliable result. *Dovalina*, 262 F.3d at 475 (citing *Goodwin v. Johnson*, 132 F.3d 162, 176 (5th Cir. 1997)).

Texas allows criminal defendants the right to appellate review, and the State must "act in accord with the dictates of the Constitution." *Evitts v. Lucey*, 469 U.S. 387, 401 (1985); *Ward v. State*, 740 S.W.2d 794, 796 (Tex. Crim. App. 1977). An indigent defendant has the right to an adequate record on appeal. *Griffin*, 351 U.S. at 18–19; *Guillory v. State*, 557 S.W.2d 118, 120 (Tex.

Crim. App. 1977). But if a defendant is represented by counsel on appeal and counsel has a copy of the appellate record, there is no constitutional requirement that the defendant also be given a copy. *Hooks v. Roberts*, 480 F.2d 1196, 1198 (5th Cir. 1973), *cert. denied*, 414 U.S. 1163 (1974) (citations omitted).

In rejecting this claim on state habeas review, the trial court determined that Freeman failed to demonstrate that but for appellate counsel's actions, he would have prevailed on appeal. *See* Docket Entry No. 12-28, at 36, ¶ 8. The record supports this result. Freeman was represented by appointed counsel on direct appeal. A copy of the appellate record was prepared and provided to Freeman through his appointed counsel, to use in preparing the appeal. Counsel filed a brief urging a single issue on appeal—that the trial court abused its discretion by allowing an outcry witness to testify at trial to a "substantially different version of events" than that provided in the State's pretrial notice. *Freeman*, 2014 WL 5500481, at *1. The First Court of Appeals affirmed Freeman's conviction. Under these circumstances, Freeman was accorded all of his rights concerning the appellate record.[2] Because Freeman is not entitled to relief on the underlying claim, he cannot demonstrate that appellate counsel was ineffective for failing to provide him with a copy of the record on appeal.

Freeman fails to demonstrate that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. The respondent is entitled to summary judgment on this claim.

---

[2]To the extent Freeman may further assert that counsel should have provided him a copy of the record so that he could supplement counsel's appellate brief, he fails to demonstrate an entitlement to relief. A criminal defendant in Texas has no right to "hybrid representation," both by counsel and on his own behalf. *See Robinson v. State*, 240 S.W.3d 919, 922 (Tex. Crim. App. 2007).

**D.    The Claim of a Speedy-Trial Violation**

In his final ground for relief, Freeman alleges that he was denied his constitutional right to a speedy trial. (Docket Entry No. 4, at 18–19; Docket Entry No. 4-1, at 1). The Sixth Amendment guarantees every criminal accused "the right to a speedy . . . trial." U.S. CONST. amend. VI. A four-factor balancing test applies to determine whether a speedy-trial violation has occurred. The factors are: (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). The factors are related and are to be considered together. *Id.* To trigger a speedy-trial analysis under these factors, an accused must allege that the interval between accusation and trial crossed the threshold that separates ordinary delay from presumptively prejudicial delay. *Id.*; *Doggett v. United States*, 505 U.S. 647, 651–52 (1992). A defendant's right to a speedy trial attaches at the time of arrest or indictment, "whichever comes first." *Doggett*, 505 U.S. at 652. The minimum delay required to trigger a speedy-trial analysis is one year. *Amos v. Thornton*, 646 F.3d 199, 206 (5th Cir. 2011). The delay between Freeman's indictment and trial exceeded one year. The court applies the four-factor test outlined in *Barker* to determine whether a constitutional violation occurred.

Approximately 22 months lapsed between the date of Freeman's arrest and his trial. Freeman was arrested on October 4, 2011. *See* Docket Entry No. 12-5, at 19. His trial did not begin until August 12, 2013. *See* Docket Entry No. 11-18. The Fifth Circuit has held that a delay of less than five years is not presumptively prejudicial and is not long enough to weigh heavily in the defendant's favor. *See Amos*, 646 F.3d at 206–07 (a delay of less than 30 months precludes the first *Barker* factor from "strongly favor[ing] the accused"); *United States v. Frye*, 372 F.3d 729, 737 (5th Cir. 2004) (courts generally have presumed prejudice "only in cases in which the post-indictment delay

lasted at least five years"). The first factor, the length of delay, does not weigh heavily in Freeman's favor.

Nor do the reasons for the delay favor Freeman. "[A] deliberate delay to disadvantage the defendant's defense is weighed heavily against the state." *Amos*, 646 F.3d at 207 (quoting *Goodrum v. Quarterman*, 547 F.3d 249, 258 (5th Cir. 2008)). "At the other end of the spectrum, delays explained by valid reasons or attributable to the conduct of the defendant weight in favor of the state." *Id.* "Between these extremes fall unexplained or negligent delays, which weigh against the state, 'but not heavily.'" *Id.* The record reflects that Freeman's trial was delayed by numerous requests for resets, most requested or agreed to by Freeman. By requesting or agreeing to continuances, a defendant can waive his right to a speedy trial. *See, e.g., Frye*, 372 F.3d at 732; *Davis v. Puckett*, 857 F.2d 1035, 1041 (5th Cir. 1988); *see also Felder v. Quarterman*, Civil No. 4:06-cv-0794, 2006 WL 2365568, at *6 (S.D. Tex. Aug. 15, 2006) (because the petitioner's trial counsel agreed to state-requested resets, the fault for the delay did not lie with the State). The second factor does not weigh in Freeman's favor.

The third factor is whether the defendant "diligently asserted his speedy trial right." *Amos*, 646 F.3d at 207 (quoting *United States v. Parker*, 505 F.3d 323, 329 (5th Cir. 2007)). A defendant must appropriately assert his speedy-trial right, viewed in "light of his other conduct." *United States v. Loud Hawk*, 474 U.S. 302, 314 (1986). "[I]t is possible for a defendant to insufficiently assert his speedy-trial rights despite 'repeatedly mov[ing] for dismissal on speedy trial grounds.'" *Laws v. Stephens*, 536 Fed. App'x. 409, 413 (5th Cir. 2013) (quoting *Loud Hawk*, 474 U.S. at 314). Freeman did not move for a speedy trial until July 31, 2013. (Docket Entry No. 12-6, at 52). The trial court granted the motion on August 12. Freeman's trial began that same day. *Id.* at 53. The record

reflects that before July, Freeman had filed at least two letters—without his counsel's involvement—expressing his desire to go to trial. Even assuming it was proper for Freeman to file these requests while represented by counsel, any assertion that both sides were prepared for trial at the time that he made those requests are contradicted by the record. This factor does not weigh in Freeman's favor. *See Goodrum*, 547 F.3d at 259 (this factor hinges on the "frequency and forcefulness" of the "defendant's invocation").

The fourth and final factor in the speedy-trial inquiry is the prejudice to the defendant from the delay. Unless the first three factors weigh heavily in his favor or the delay is at least five years, the petitioner must show "actual prejudice." *Amos*, 646 F.3d at 208; *Goodrum*, 547 F.3d at 260. "'Actual prejudice' is assessed in light of the three following interests of the defendant: (1) 'to prevent oppressive pretrial incarceration'; (2) 'to minimize anxiety and concern of the accused'; and (3) 'to limit the possibility that the defense will be impaired.'" *Amos*, 646 F.3d at 208 (quoting *United States v. Harris*, 566 F.3d 422, 433 (5th Cir. 2009), *cert. denied*, 559 U.S. 975 (2010)). The record does not demonstrate that the 22-month delay undermined any of these interests.

The four *Barker* factors do not favor Freeman. He has not shown a violation of his speedy-trial right under the Sixth Amendment. The record does not show that the state court's decision rejecting his speedy-trial claim was contrary to, or involved an unreasonable application of, clearly established federal law. He is not entitled to relief on this claim.

## VI.    Conclusion

The respondent's motion for summary judgment, (Docket Entry No. 13), is granted; Freeman's petition for a writ of habeas corpus, (Docket Entry No. 1), is denied, and this case is dismissed with prejudice. Any remaining pending motions are denied as moot.

Rule 11 of the Rules Governing Section 2254 Cases requires a district court to issue or deny a certificate of appealability when entering a final order adverse to the petitioner. A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 276 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336 (quoting *Slack*, 529 U.S. at 484). When relief is denied on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

This court concludes that jurists of reason would not debate the procedural rulings in this case or debate whether Freeman stated a valid claim for relief. A certificate of appealability will not issue.

SIGNED on September 17, 2018, at Houston, Texas.

Lee H. Rosenthal
Chief United States District Judge